CARL E. ROSTAD
RYAN G. WELDON
Assistant U.S. Attorneys
U.S. Attorney's Office
P.O. Box 3447
Great Falls, Montana 59403-3447
Direct Line:   (406) 771-2001
Phone:        (406) 761-7715
FAX:          (406) 453-9973
Email:        carl.rostad@usdoj.gov
              ryan.weldon@usdoj.gov

ATTORNEY FOR PLAINTIFF
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| UNITED STATES OF AMERICA, | CR 16-22-GF-BMM |
| --- | --- |
| Plaintiff, | CR 16-35-GF-BMM |
| | CR 16-41-GF-BMM |
| vs. | |
| BRIAN KELLY EAGLEMAN, | CONSOLIDATED OFFER OF PROOF FOR DEFENDANT BRIAN KELLY EAGLEMAN |
| Defendant. | |

Brian Kelly Eagleman has moved to withdraw his not guilty pleas and enter guilty pleas to charges in each of the above enumerated cases.   As the plea agreements are interdependent and the facts of each separate case often involve overlapping evidence, or relevant evidence under Rule 404(b), *Federal Rules of*

1

*Evidence*, from one case to the other, the United States, by and through its counsel, Carl E. Rostad, Assistant U.S. Attorney for the District of Montana, submits this Offer of Proof in all three cases to provide the factual basis for the defendant's pleas.

*ELEMENTS:*

1. *Indictment in CR 16-22-GF-BMM – Count IV*
2. *Indictment in CR 16-35-GF-BMM—Sole Count*

### Theft from an Indian Tribal Organization
### Title 18 U.S.C. § 1163

**First**, that the defendant knowingly and willfully embezzled, stole, converted to his own use, or misapplied money or funds, or property;

**Second**, that the property so taken belonged to the Chippewa Cree Tribe or any agency thereof, an Indian tribal organization, or which had been entrusted to the custody or care of an officer, employee, or agent of the Indian tribal organization; and

**Third**, that the amount taken exceeded $1,000.

3. *Indictment in CR 16-41-GF-BMM – Count I*

### Income Tax Evasion/Evasion of Payment
### Title 26 U.S.C. § 7201

**First**, the defendant owed more federal income tax for the calendar year 2002 through 2010 than was declared due on the defendant's income tax returns for those calendar years;

**Second**, the defendant knew that more federal income tax was owed than was declared due on the defendant's income tax returns;

2

**Third**, the defendant made an affirmative attempt to evade or defeat payment of such additional tax; and

**Fourth**, in attempting to evade or defeat payment of such additional tax, the defendant acted willfully.

*FACTUAL BASIS:*

If this case went to trial, the United States would prove the following:[1]

## I. INTRODUCTION

The Chippewa Cree Tribe (CCT) of the Rocky Boy's Indian Reservation is located in north central Montana and has a population of approximately 2,500 tribal members. The Tribe is governed by an elected tribal council—the Chippewa Cree Business Committee—and the council and most government functions are headquartered at Box Elder, Montana.

## II. THE HOT PLANT TRANSACTION (CR 16-22-GF-BMM)

At some point in 2011, Kevin McGovern, a businessman from Billings, Montana, decided he wanted to sell a "hot plant" which was in the inventory of his company, MC Equipment Holdings, LLC. A "hot plant" is an industrial machine

---

[1] The offer of proof does not encompass all of the proof that the United States would offer at trial but only the proof that would be necessary to support the elements of the charge to which the defendant is pleading guilty. The United States possesses, or may possess, other evidence which may be redundant to the evidence described below or otherwise unnecessary to the purposes of this stage of the proceeding. The United States possesses, or may possess, other evidence which will more fully inform the Court as to the appropriate sentence. Neither the Court nor the defendant should consider this pleading as inclusive of all evidence known to the government or a self-imposed limitation on the evidence it may use in the future for purposes other than to support the entry of plea.

3

that keeps asphalt warm and pourable until it comes time to spread it on the road bed and roll it into place.   MC Equipment bought the hot plant for $1.2M in May of 2010 from Asphalt Drum Mixers (ADM) located in Huntertown, Indiana. McGovern agreed to pay Tony Belcourt, the Chief Executive Officer of the Chippewa Cree Tribe's construction enterprise, the Chippewa Cree Construction Corporation (CCCC), a finder's fee commission if he could secure a buyer for the hot plant.

At the time, McGovern and Belcourt had several business connections including their partnership in a Billings pipe and pipe supply company called MT Waterworks.   McGovern and one of his other companies, CMG Construction, had also received three sole-source subcontracts—totaling $2.5M—the previous year from Belcourt and the CCCC.

Belcourt subsequently gave a presentation to the Chippewa Cree Business Council in support of the purchase of the hot plant by the Tribe and was supported in the effort by Brian Kelly Eagleman, an elected member of the CCT Business Committee, Chairman Bruce Sunchild and Vice Chairman Chance Houle. Eagleman served as the Chairman of the CCT Oversight Committee for the Roads Branch – with direct supervisory authority over Roads Branch Director Tim Rosette.   Houle was the Vice Chairman of that Oversight Committee.

4

On January 05, 2012, the CCT Business Council formally approved a tribal resolution for the purchase of the hot plant and related equipment for their Tribal Roads Program. Sunchild, Eagleman, and Houle all supported the resolution and it was executed by Chairman Sunchild.

In February 2012, through a series of four wire transfers, the Tribe paid MC Equipment $1.7 million. To cover the final two wire transfers, $1 million, in the form of a loan, was transferred from the CCT Insurance Recovery Fund to CCT. The accounts of the CCT Insurance Recovery Fund were controlled by Belcourt, Rosette, and CCT Chairman Bruce Sunchild.

The hot plant and related equipment were then shipped to the Rocky Boy's Indian Reservation. On April 09, 2012, at the direction of Tony Belcourt, McGovern issued a $229,000 finder's fee commission check from the MC Equipment business checking account payable to Huston Leasing. Huston Leasing was owned by Havre businessman Shad Huston. Huston Leasing was not involved in any aspect of the buy-sell agreement between the tribe and MC Equipment. Shad Huston told investigators that Huston Leasing was not entitled to any type of finder's fee / broker's fee / commission with respect to this transaction.

On April 20, 2012, from the MC Equipment deposit, Huston obtained a $12,558 cashier's check for the benefit of Sunchild, who wanted his son to get

treatment in a private facility in Billings. On April 25, 2012, Huston used $50,000 of the MC Equipment money to purchase a cashier's check payable to the IRS, with remitter of Violet and Brian Kelly Eagleman. Huston also made three separate payments between April and July, totaling $8000, to Tim Rosette.

The hot plant transaction created a financial problem for the tribe. The deal depleted the CCT Roads Branch maintenance account of funds going into the 2012 road maintenance season. On May 17, 2012, CCT obtained a loan from First Interstate Bank in the amount of $700,000 to cover the shortfall in the CCT Roads account. This loan was rolled over in December 2012.

In October 2012, six months after the purchase of the hot plant by the tribe, a second Bill of Sale was issued between CCT Roads (seller) and the Chippewa Cree Construction Corporation (CCCC) (buyer) for the purchase of the hot plant for $1.7 million. This document was signed by Rosette (as seller on behalf of the Roads Branch), Belcourt (as buyer on behalf of CCCC), and Sunchild as the approving tribal official. The CCCC assumed the $1 million loan payable to CCT Insurance Recovery Fund.

The hot plant remained unassembled and stored at the casino parking lot from 2012 to 2013, and then was relocated to the yard at the CCCC until it was sold. The hot plant was never put together, tested, or used by either the Roads Branch or CCCC. No one from either the Roads Branch or CCCC was ever

trained on the use of the hot plant. In July 2015, the CCCC sold the hot plant to a Canadian business for $1million.

### III. TAX EVASION/EVASION OF PAYMENT (CR 16-41-GF-BMM)

By April 2013, Brian Kelly Eagleman and Violet Eagleman were assessed a delinquent tax debt of over $60,000.

| Tax Year | Taxes |
|---|---|
| 2003 | $3,654.00 |
| 2004 | $10,408.00 |
| 2005 | $14,942.00 |
| 2006 | $14,461.00 |
| 2007 | $8,427.00 |
| 2008 | $1,522.00 |
| 2010 | $7,221.00 |

The Eagleman's total tax liability was significantly higher based on penalties and interest.

The $50,000 cashier's check referenced in the preceding section was drawn off the Huston Leasing account at Independence Bank, dated April 25, 2012, was made payable to the Internal Revenue Service with the remitter being Violet and Brian Kelly Eagleman.

Eagleman held on to the check for eight months without paying his tax liability, and then on January 13, 2013, Eagleman went into the bank and had the cashier's check reissued for $48,000 and took out $2,000 in cash. Then three days later on January 16, 2013, Eagleman went back to the Bank and requested the

$48,000 check be reissued as two checks—one for $15,000 and one for $25,000, both payable to IRS—and took out $8,000 in cash. Then ten days later on January 25, 2013, Eagleman went back to the Bank and cashed out the $15,000 check. Finally, two weeks later on February 11, 2013, Eagleman went back to the Bank and cashed the last $25,000 check. Eagleman told the bank he needed the money to pay bills. Multiple witnesses have indicated the $50,000 check was specifically drawn up that way to help Eagleman resolve some of his tax problems so he wouldn't get into trouble with the IRS.

Eagleman was well aware of his tax indebtedness and obligation to pay tax due and owing. The IRS's Civil Collection Division has been in constant contact with him from 2004 through 2015 regarding these liabilities. They have sent notices, letters, lien and levy notices, etc. Eagleman did not file a tax return for the calendar years 2011-2014. Eagleman maintains a bank account at Bear Paw Credit Union, which is the only account the IRS was aware of for levy and satisfaction of tax debt. This account has been analyzed for 2009-2013 and he maintains a balance of about $25-$30. Eagleman cashes a very high percentage of the large dollar checks received from Tribal sources (and others – like a $17,515.49 check he received from PNC Bank for an insurance loss).

## IV. THE EXPLOITATION OF THE LOAN PROGRAM (CR 16-35-GF-BMM)

Brian Kelly Eagleman was a Chippewa Cree Tribal Councilman on the Rocky Boy Business Committee from 1993 through 1995, and then again from 1999 through 2004. He was re-elected to serve as a public official on the Business Committee from 2009 to mid-November 2012. Starting in 2003, Eagleman began obtaining loans from the tribe.

In January 2012, the formal CCT Loan Program was created which introduced policies, procedures, and regulations, including one that provided that no one was eligible for a new loan if they had an unpaid balance. Specifically, subsection (C)(5) of the newly instituted Tribal Loan Handbook provided "Any persons applying for a loan must have a balance of less than $1000 and be in good standing, no exceptions. (Note: If you turn in a loan application and you have a balance that exceeds $1000.00 then the Loan Committee will not review the application for final approval.)"

Regardless of these provisions, between January 17, 2012 and November 5, 2015, Eagleman obtained 45 additional loans totaling $37,650.12, well knowing that his ability to ever repay his obligations to the tribe was virtually non-existent. Eagleman took loans in excess of the $500 limit. Some of Eagleman's loan

applications were unsigned or showed no indication of approval by the loan committee.

As of January 1, 2012, Eagleman owed approximately $246,000 to the tribe in unpaid personal loans. In November of that year, Eagleman lost his position as an elected member of the CCT Tribal Business Committee. When interviewed in in March of 2016, Eagleman admitted that he had received "more than $150,000" in loans over the years, but thought the loan balances would be repaid through payroll deductions. Eagleman's last payroll deduction was in December 2015 and was for $55.

At the time of his interview in March 2016, Eagleman's indebtedness to the Tribe, according the CCT Central Services Finance Office, was $245,989.28. At $55 per pay period—$ 110 per month, $1320 per year—it would take more than 185 years to repay Eagleman's indebtedness to the Tribe. Assuming that no additional interest accrued on the debt.

DATED this 22nd day of June, 2016.

        MICHAEL W. COTTER
        United States Attorney


        <u>s/ Carl E. Rostad</u>
        CARL E. ROSTAD
        Assistant U.S. Attorney
        Attorney for Plaintiff